### J. E. AND P. W. BOULDIN V. WILL. MILLER, JR.

#### No. 201.

1. **Nonresident Minor—Local Guardian May Sell Land.**

Under article 2515 of the Revised Statutes the lands of nonresident minors may be sold by a local guardian under proceedings in guardianship of the estate of such minors. Sale may be made to provide for education of the minors ...................................................... 365

2. **Probate Courts are of General Jurisdiction—Fraud.**

The Probate Court being a court of general jurisdiction within the scope of the power conferred upon it in matters of guardianship, its proceedings can · not be collaterally attacked for fraud ................................. 366

3. **Same—Presumption.**

The law, in absence of proof, presumes that all jurisdictional facts existed. If notice (of application for sale of land) was a jurisdictional fact, it devolves upon the party attacking the sale to prove the want of notice. In absence of such evidence, the law would presume notice................. 366

**4. Construction of Deed—Limitation.**

Land was conveyed to certain minors, "to be held in common and unsold until the youngest of said boys shall become of age—that is, the age of twenty-one years." Two of the grantees died, their parents surviving. In guardianship of survivors their interest was sold while they were minors. After their majority they sued for the land.  *Held:*

1.  The language does not amount to a condition the breach of which would defeat the estate of the grantees and cause same to revert to the original grantee...... ................................................. 366

2.  In absence of such condition, the grantees being vested in fee, were not limited or restricted from conveying the estate granted; for unlimited power of alienation in the holder to the extent of his ability to convey under the law is a necessary incident to an estate in fee simple.... ...... 367

3.  In event that a valid condition was contained in the deed against sale until majority of the youngest of the grantees, a sale by the grantee in breach of the condition would be binding between the parties to the sale, and in absence of entry by original grantor for condition broken would be valid against him................................................................ 367

4.  There being no valid condition against alienation, the probate sale would be valid against both the original grantees and the original grantor, 367

5.  Since the unlimited power of alienation is a necessary incident to an estate in fee, and since there is no person who can enforce the attempted limitation on the power to sell, it follows that the words of limitation in the deed above cited are ineffectual in law, and the deed must be construed as if they had not been written therein................................ 368

ERROR to Court of Civil Appeals for Second District, in an appeal from Wise County.

The facts are sufficiently stated in the opinion.

*J. M. Moore* and *J. W. Meek*, for plaintiffs in error.—1. The court erred in admitting the two deeds from D. W. Bouldin and wife, Belle Bouldin, and D. W. Bouldin, Jr., in evidence, because by the terms of the deed from James E. Bouldin, Sr., to his four grandchildren, Charles, David, Powhatan, and James E. Bouldin, Jr., under which these grantors held, it was expressly provided that the land sought to be conveyed should be held in common and unsold until the youngest of the grandchildren should attain his majority, and at the execution of said two deeds, the youngest of said four grandchildren had not attained his majority.

2. At the time of the execution of the deed referred to in the assignment, and introduced in evidence by defendant, the youngest of the four grandchildren to whom the land was conveyed by their grandfather had not attained the age of 21. The deeds, therefore, by their father, mother, and brother objected to, could not operate to pass any title, and these plaintiffs, therefore, as tenants in common with their father and mother, ought to have been sustained in their objection to said deeds, and as such tenants in common recovered the entire land

sued for.  Dougal v. Foyer, 3 Mo., 40; Johnson et al. v. Schumacher et al., 72 Texas, 334; Ney v. Mumme, 66 Texas, 268; Alford v. Alford, 1 Texas Civ. App., 245.

3. It was competent under the laws of Texas for the grantee of the plaintiffs to restrain by the terms of his deed the alienation and partition of the land conveyed in manner and form as he did, and it was incompetent for the County Court to direct an absolute sale by the guardian of the minors, because its jurisdiction over the land could not extend to defeat the reasonable will and intention of the grantor. Dougal v. Foyer, 3 Mo., 40; 5 Mo., 273; 6 Mo., 270; 9 Mo., 461; Stewart v. Brady, 3 Bush, 623; Stewart v. Barrow, 7 Bush, 368; Langdon v. Ingram, 28 Ind., 368; Hill v. Hill, 4 Barb., 419; Hine v. Right, 47 N. H., 396; McKinrie v. Pickle, 16 Pa. St., 140; Cowell v. Springs Co., 100 U. S. (10 Otto), 57; French v. Old South Society, 106 Mass., 479; Pugh v. Mays, 60 Texas, 190; Cravens v. White, 73 Texas, 577; Jeffery v. Graham, 61 Texas, 481; Rev. Stats., title 19, arts. 550, 551, 553, 556; Id., title 99, art. 4874.

3. The court erred in rendering judgment for defendant, because the sale of the land by the guardian was fraudulent and void. Duncan v. Veal, 49 Texas, 603.

4. The whole transaction evidencing fraud upon the rights of minors, the irregularities in the proceedings were sufficient to put subsequent purchasers upon inquiry and notice of the fraud. Bland v. Freeman (Ark.), 23 S. W. Rep.

5. Under the law as it existed when the probate proceedings were had, a ward's estate could not be sold without the issuance of a citation to all persons interested in the ward, and service by posting for at least twenty days before the first day of the return term. Rev. Stats., arts. 2575, 2576; Potter & Dwarris on Statutes, etc., 221, note 29.

6. The Probate Court has no power to direct a sale of a nonresident minor's land for the purpose of education, or for any other purpose, except for preservation and care of the estate, there being no personal guardianship to which the proceedings are ancillary. Munson v. Newson, 9 Texas, 109; Schouler on Dom. Rel., p. 303; Boyd v. Glass, 34 Ga., 253; In re Hubbald, 82 N. Y., 90; 2 Laws. Rights, Rem., and Prac., sec. 282; 9 Am. and Eng. Encyc. of Law, p. 94, title Guardian and Ward, subdiv. 3, clause c.

*J. M. Moore*, for plaintiffs in error, and replying to brief for appellee.—In addition to the authorities cited in the brief for appellants on the question of the right to restrain alienation and partition, the court's attention is directed to the following authorities: Rev. Stats., art. 1938, 3132; Shackelford v. Hall et al., 19 Ill., 212; Grassilli v. Lowden, 11 Ohio St., 349; Beach on Law of Wills, sec. 229, and authorities; Hunt v. Wright, 47 N. H., 396; Langdon v. Ingram, 28 Ind., 360; 2 Jarm.

on Wills, 5 ed., sec. 18, p. 20; 1 Warv. on Vend., secs. 14, 15, pp. 453–455; Tied. Real Prop., sec. 275, p. 183.

The English authorities are not accessible to me in such form as to justify my citation therefrom, but the authorities cited in Warville and Gray seem to indicate that the rule of modern English authorities supports the view contended for. Jacob Fisher's Digest, title "Deeds," shows that the intention of the grantor in a deed is to be regarded as it is in a will.

The breaking down of feudalism has had the effect to extend the owner's power over his land (2 Minor's Institutes, p. 73), and the power or rights over his lands has become like that of the king. The right of the king to impose restraints rested on the principle that he was feudatory of no man. Texas has maintained the policy of restraining alienation, and in this set the example to its citizens by grants of conditional certificates and in many of its colonial and military acts. While I of course do not claim that the right of the private owner is commensurate with that of the State, I do claim, in the absence of express legal restraints and subject to the maxim, "So use your own as not to injure your neighbor's," that there is nothing to control him in the use or disposition of his land. Yielding to Professor Gray, attorneys for appellee say, that "no man should have an estate to live on but not an estate to pay his debts with." But the policy of Texas is not such and has never been, as witness its homestead and exemption laws and the history of their growth. In a State so solicitous to protect the family from the avarice of creditors, can it be consistently held that a reasonable safeguard thrown around his issue, by an ancestor, to protect them against the inexperience and accidents of nonage and young manhood, shall be disregarded in the interests of possible creditors of such minors, and positively disrespected even when no creditors exist at all?

A is the owner of the field, Blackacre. B is indebted to C. C has no right to look to A for payment, nor any right of levy on Blackacre. Is he therefore injured because A conveys Blackacre to B with a brief restraint on B's right of alienation? This illustration, I trust, is sufficient to meet the untenable objection, that "no man should have an estate to live on which is not an estate to pay debts with."

Suppose A, instead of consigning Blackacre to B, had given it to D. With equal propriety he could have complained.

The law suffers contracts in restraint of trade, and suffers, to a certain extent, restraints on marriage, a field wherein thinking men hesitate longest to impose restraints on the free exercise of mutual wills. Yet we are to have it that a restraint on the alienation of "an acre of barren ground, long heath, brown furze, anything," can not be; and this founded on such technical and scholastic language as "whatever may be the words used, the grantor having conveyed the fee simple

estate, vesting in presenti, could not restrain the grantees in their right to alienate the same for any length of time." Is it not more in accord with the trend of modern thought to declare, without regard to the form of instrument and notwithstanding grammatical or linguistic inconsistencies, if the intention of the grantor is clear and reasonable it must be duly respected by the courts and those dealing in the subject of his gift?

*Carswell & Woody* and *Bullock & Lillard*, for defendant in error.—1. The restrictive words in the deed referred to were not sufficient to raise a conditional estate, or to in anywise limit the estate conveyed, but said deed conveys an absolute fee simple estate. Jeffery v. Graham, 61 Texas, 481; 2 Washb., side page 446; 1 Warv. on Vend., p. 454; Mandlebaum v. McDonell, 29 Mich., 78; Craig v. Wells, 11 N. Y., 315; Doebler's Appeal, 64 Pa. St., 623; Hall v. Tufts, 18 Pick., 459; Pace v. Pace, 73 N. C., 119; Bank v. Davis, 21 Pick., 42; Tillinghast v. Bradford, 5 R. I., 205, and note, p. 495; 15 Depyster v. Micheal, 57 Am. Dec., 470.

2. Whatever may be the words used, the grantor having conveyed the fee simple estate vesting in presenti, could not restrain the grantees in their right to alienate the same for any length of time. Gray's Restraints on Alienation, sec. 52, p. 59; Id., sec. 55, p. 321; Warv. on Vend., p. 455, sec. 15; Mandlebaum v. McDonell, 18 Am. Rep., 70; Anderson v. Cary, 38 Am. Rep., 602; Depyster v. Micheal, 57 Am. Dec., 470, and note p. 495; Oxly v. Lane, 35 N. Y., 346, 347; 4 Kent, 131; Roosevelt v. Thurman, 1 Johns. Ch., 220.

We see no reason why a different rule should prevail in Texas than in the other States of the Union arising out of any peculiarity in their titles. If our titles are alodial, so are the titles in other States, and the idea that restraints of the power of alienation are void derives no extra force from the common law as intimated in appellant's argument, but on the contrary it only obtained existence on the abolition of feudal tenures, and those American courts which hold that such restraints are valid have followed the modern English authorities, which are based upon a relaxation of the common law rule, and the great weight of American authority is against the validity of such restraints. 1 Warv. on Vend., pp. 453, 454, and notes. This question in Texas, so far as we have been able to find out, is an open question, and we can not see that our statutes affect it one way or another. Article 553 of the Revised Statutes, cited by appellant, only authorizes the insertion of lawful clauses in deeds of conveyance, and the question recurs whether a clause (restraining the power in the grantee to alienate at any time he saw proper) in a deed conveying the entire estate vesting at once, would be lawful.

3. The sale of the land by P. O. Saunders, guardian, was neither fraudulent nor void. The irregularities, if any, in the sale of the land can only be called in question in a direct proceeding had for the purpose of setting the sale aside, and can not be questioned in a collateral proceeding. Kendrick v. Wheeler, 20 S. W. Rep., 45; Weems v. Masterson, 80 Texas, 49; Lyne v. Sanford, 82 Texas, 63.

4. It was not proven by the record or otherwise that no citation or notice of the application to sell the land was given; the presumption is that the notice was given.

5. If the notice of sale had been defective, or if there had been no notice, it would at most only have rendered the sale voidable, and was such an irregularity as could not be questioned in this suit. Kendrick et al. v. Wheeler et al., 20 S. W. Rep., 45.

6. The Probate Court of this State has the power to direct the sale of a nonresident minor's land wherever the necessity is shown to exist for such purpose, and it is sufficient for such purpose if it is shown to be necessary for the maintenance or education of such minor.

It is shown in the order granting the application to sell the land that there was a necessity for the sale, for the education and maintenance of the minors. Rev. Stats., art. 2515; Neal et al. v. Bartleson et al., 65 Texas, 479; Hendrich v. Wheeler & Bowman, 85 Texas, 247, and cases cited; Vogelsang v. Null, 67 Texas, 465, and cases cited.

DENMAN, Associate Justice.—Plaintiffs in error, James and Powhatan Bouldin, sued defendant Miller in trespass to try title to recover the land in controversy, and defendant pleaded not guilty. Thereupon plaintiffs filed a paper alleging no facts, but offering to refund any sum the court might find chargeable to them on account of any money received by their alleged guardian, who sold the land. This paper presents no issue, and the case will be considered as one of ordinary trespass to try title, with plea of not guilty.

James E. Bouldin, the common source of title, in 1876, in due form of law executed a deed which, divested of unnecessary verbiage, reads as follows: "I, James E. Bouldin, in consideration of natural love and affection I have for my grandchildren, sons of David W. and Belle Bouldin, do hereby give, grant, alien, and convey unto Charles, David, Powhatan, and James Bouldin, in undivided equal portions, the following tracts or parcels of land, to be held in common and unsold until the youngest of said boys shall become of age, that is, the age of 21 years, known and described as follows, to wit." Then follows proper description of the land in controversy, and usual habendum and warranty clauses unto the said grantees, "their heirs and assigns forever."

It appears from the record that prior to the time the youngest of said grantees arrived at the age of 21, and before the sale of plaintiffs'

lands by order of Probate Court hereinafter referred to, the two grantees, Charles and David Bouldin having deceased, leaving David W. and Belle Bouldin their sole heirs, said David W. and Belle Bouldin conveyed to defendant all their interest in the land in controversy.

The Probate Court of Wise County convened July 21, 1884, and adjourned August 7, 1884. On application of plaintiffs, who were then over 14 years of age, and capable of selecting a guardian under our law, said court on the 2nd day of August, 1884, appointed a guardian of the estates of plaintiffs, which guardian on the same day qualified according to law and filed an inventory. The next term of said court convened September 15th, and adjourned October 6, 1884.

The record shows an order of sale to have been entered upon the minutes of said court directing the sale of the land in controversy by said guardian. This order is not dated, and the Court of Civil Appeals finds as a question of fact that the record of this cause "does not show affirmatively that the order of sale was made without a citation or the possibility of a citation served for the length of time required under article 2575 of the Revised Statutes." The statute cited requires notice of applications to sell a ward's land to be given to "all persons interested in the ward," by posting same "for at least twenty days before the first day of the term of the court to which the citation is made returnable." The guardian's report of sale was confirmed by decree of the court filed October 4, 1884, which recites that it appeared to the court that the sale had been made "in conformity with law and the order of the court heretofore made."

The defendant deraigns title by mesne conveyances from the purchaser at such sale.

The court below rendered judgment for defendant, and the Court of Civil Appeals affirmed the same.

The record shows, that at the time the probate proceedings were had plaintiffs were residents of California, and therefore plaintiffs claim that the Probate Court of Wise County, Texas, though it had jurisdiction to appoint a guardian, had no jurisdiction to order a sale for the purpose of educating the wards, but should have confined its orders to preservation of the estate. The statute authorizing the appointment of guardians in such cases expressly provides for the sending of money abroad to educate the nonresident minor. The nonresident minor can only dispose of his estate through the proceedings of the Probate Courts of Texas, and if such courts, when authorized by statute, can not make valid disposition of the minor's land for his education, then he might be forced to the alternative of moving into the State or foregoing the advantages of an education.

We can not so construe the law as to make the preservation of the property of more importance than the education of the ward. Rev. Stats., art. 2515. The Probate Court being a court of general juris-

diction within the scope of the powers conferred upon it in matters of guardianship, its proceedings can not be attacked collaterally for fraud, as seems to have been attempted in this case; but can only be attacked for such cause in appropriate proceedings instituted for that purpose. Therefore we can not consider any assignment revising that issue. 80 Texas, 45.

Plaintiffs contend that the Probate Court had no jurisdiction to order the sale of the property, for the reason that no notice of the application to sell was given, as required by article 2575 of the Revised Statutes, above cited. We do not deem it our duty to consider or express an opinion as to whether notice of the application to sell realty was, at the time these proceedings were had, a jurisdictional fact, because the plaintiffs, who are seeking to attack the validity of the judgment of the Probate Court as being void for want of such notice, have not shown that no such notice was given. We can not say as a matter of law that the finding of the Court of Civil Appeals on this question, above set out, is without evidence. The law, in the absence of proof, presumes that all jurisdictional facts existed. If notice was a jurisdictional fact, the defendant relying upon the judgment was not called upon to establish such notice, nor to show the order of sale to have been entered at such a time as to make notice possible; but the burden was upon plaintiffs to establish the fact that notice was not given. We therefore conclude that the probate proceedings, aided by the legal presumptions above discussed, were not void, but were sufficient to pass the title of plaintiffs to the purchaser at the guardian's sale.

Plaintiffs claim, however, that the clause in the deed above set out, "shall be held in common and unsold until the youngest of said boys shall become of age, that is, the age of 21 years," was a valid limitation on the power of each grantee and all persons claiming under them to dispose of the property until the youngest grantee arrived at the age of 21, and that therefore the deed from David W. and Belle Bouldin, above referred to, as well as the probate sale, were void, because made before the youngest of said grantees was 21 years old. It is clear that the language used does not amount to a condition the breach of which would defeat the estate of the grantees or either of them, and cause same to revert to the grantor or his heirs. It is not contended by plaintiffs that the language of the deed is such as to annex a condition to the estate of the grantees therein, for it could avail them nothing, in this suit of trespass to try title, in which they must recover, if at all, on the strength of their own title, to show that such title had been defeated by condition broken. The language of the granting clause in the deed is sufficient under the statute of Texas to convey an estate in fee simple. Rev. Stats., art. 551.

The question is, could the grantor conveying to the grantees a vested estate in fee simple, without a condition the breach of which would

avoid the estate granted, impose a valid limitation or restriction upon the power of the grantees to convey the estate granted for any period of time, however reasonable? The estate of the citizen is not the land itself, but the status or relation which the law permits him to bear towards the land. The land is an inanimate body towards which different persons may under the law bear different relations, each constituting a status or estate in the land; as an estate for years in one, followed by an estate for life in another, and an estate in fee in another. The nature and incidents of these different estates are fixed by known rules of law. Some are necessary; others are usual incidents. The law will not permit private parties to dispense with the former by contract. Since these relations or estates are the creatures of the law, their nature and incidents may be changed thereby; from which it follows that the State may, by law, impose restrictions and annex conditions to its grants, which the general rules of law forbid to the individual.

We have seen that the deed in question vested in the grantees a fee simple estate. Unlimited power of alienation in the holder to the extent of his capacity to convey under the law is a necessary incident to a vested estate in fee simple; for if a condition not to alien, for a particular time, or to a certain person, etc., be annexed to the estate, *and if it be conceded that such condition is valid,* nevertheless the conveyance which breaches the condition is good as between the grantor and grantee therein, the condition not inuring to the benefit of such grantor and he being estopped by his own conveyance, and is also good as to the original grantor, for whose benefit the condition was annexed, until he re-enters, for condition broken, livery of seizin being necessary to the creation of such estate, it could not at common law be defeated only by corresponding notoriety of re-entry. If, as above shown, the conveyance is good at all events against the grantor therein, and good as to the original grantor until re-entry for condition broken, even when there is a condition against alienation, then it results that the conveyance would be valid as to both of said grantors when there is no condition annexed to said estate. The first grantor could not complain, because there would be no condition broken, and therefore no right of re-entry in him; and the second grantor could not complain, because he would be estopped by his own conveyance.

Thus it appears that unlimited power of alienation exists in such cases, as stated above, no matter what conditions or limitations are sought to be imposed, and that the common law afforded no remedy for breach or violation of such conditions or limitation except the right of re-entry for condition broken; and that only affected the right of the grantee in the prohibited conveyance. Then, since this unlimited power of alienation is a necessary incident to such estate, and since there is no person who can enforce the attempted limitation on

the power to sell when there is no condition, it follows that the words of limitation in the deed above are ineffectual in law, and the deed must be construed as if they had not been written therein.   29 Mich., 84; 38 Am. Rep., 602; Co. Lit., secs. 325, 330, 351.

We express no opinion as to what would have been the effect of the deed above set out if the language used had been sufficient to express a condition in restraint of alienation until the youngest grantee arrived at the age of 21.

The following authorities discuss the question:   Laval v. Staffel, 64 Texas, 372, and cases cited; 22 Am. Dec., 458 (3 Mo., 40), and note; Gray v. Blanchard (8 Pick.); Leading Cases Am. Law, Real Prop., 115, 150; 2 Minor's Inst., p. 76, 234, et seq., 339, 357, and cases cited; Large's case, 2 Leonard, 282; 3 Leonard, 182; Lit., secs. 360, 361; Co. Super. Lit., 223; Sheppard's Touchstone, p. 139, note 28, citing Large's case, 27 Mich., 84; Restraints on Alienation, by Gray, 32; 64 Pa., 17; 18 Pick., 459; 1 Warv. on Vend., p. 453–455; 57 Am. Dec., 471, and note.

The judgment is affirmed.

*Affirmed.*

Delivered December 10, 1894.