**C. B. WILEY, Appellant,**

v.

**Tommy BAKER, Appellee.**

**No. 1296.**

Court of Civil Appeals of Texas, Tyler.

Feb. 7, 1980.

**4**

---

Bill D. Hullum, Barron & Hullum, Wills Point, for appellant.

W. Bruce Monning, Wynne & Wynne, Wills Point, for appellee.

MOORE, Justice.

Appellant brought a conversion action to recover the value of an elk that escaped from his game farm and was shot by appellee. Testimony was presented before the court without a jury. The trial court entered a judgment that appellant should take nothing, from which judgment appellant duly perfected this appeal.

We affirm.

According to the findings by the trial judge, appellant operates a game farm in Van Zandt County. On November 29, 1977, appellant held in captivity a male, American Elk on his land. The elk was approximately one year of age and weighed approximately 800 pounds. It had only spike horns. On the above date, the elk escaped from his farm. It remained free and was never captured by appellant. On or around January 4, 1978, appellee discovered the elk roaming at large on land not belonging to appellant. Appellee shot and killed the elk, believing it to be a deer. He later destroyed the carcass.

The trial court filed findings of fact and conclusions of law. The court concluded that (1) the elk was a wild animal, animus ferae; (2) while appellant held the elk in captivity, it belonged to him; (3) from the time of the animal's escape to the time that it was destroyed by appellee, the elk did not belong to appellant but instead belonged to the public domain; (4) the acts of appellee did not cause any loss or damage to appellant; and (5) the American Elk is indigenous to the North American continent.

Appellant in his first point of error, argues that the trial court erred in using the old civil law test of actual possession or the old common law test of imminent possession to determine the ownership of the elk. It is appellant's argument that the legislature has altered the common law by its enactment of Texas Parks and Wildlife Code section 63.001. That section lists wild elk as a game animal, but also states that any animal listed is not a game animal if it is not indigenous to this state. Appellant contends that wild elk are not indigenous to this state, and therefore he concludes that wild elk should be treated as domesticated animals. He further concludes that if the elk is a domesticated animal, then appellant cannot lose his property interest in the elk by its escape from captivity.

Article 1 of the Texas Revised Civil Statutes states that the common law of England, when not inconsistent with the constitution and laws of this state, shall, together with such constitution and laws, be the rule of decision, and shall continue in force until altered or repealed by the legislature. *Harned v. E–Z Finance Co.*, 151 Tex. 644, 254 S.W.2d 81, 86 (1953).

The purpose of section 63.001 of the Parks and Wildlife Code is to define game animals as used in the hunting laws of this state. Thus, the definition is important when determining the bag limit and the season for certain animals, and whether such laws have been violated. In this case, however, the issue is not whether the hunting laws have been violated, but instead it is whether appellant had a property right in the elk at the time appellee shot it. Thus, the statutory definition of "game animal" as described in the Parks and Wildlife Code is not applicable in this case. *See, e. g., Petroleum Casualty Co. v. Williams*, 15 S.W.2d 553 (Tex.Com.App.1929, judgmt. adopted); *Brookshire v. Houston Independent School District,* 508 S.W.2d 675, 678 (Tex.Civ.App.—Houston [14th Dist.] 1974, no writ); *Gulf, Colorado & Santa Fe Railroad Co. v. Woods*, 262 S.W. 229, 232 (Tex. Civ.App.—Austin 1924, no writ). Consequently, the common law rule must be applied. Tex.Rev.Civ.Stat.Ann. art. 1 (Vernon 1969); *Harned v. E–Z Finance Co.*, supra.

The common law provides that animals ferae naturae belong to the state and no individual property rights exist as long as they remain wild, unconfined, and undomesticated. *Jones v. State*, 45 S.W.2d 612, 613–14 (Tex.Cr.App.1931). Unqualified property rights in wild animals can arise when removed from their natural liberty and made subjects of man's dominion. This qualified right is lost, however, if they regain their natural liberty. *See generally Koop v. United States*, 296 F.2d 53, 60 (8th Cir. 1961), *quoting* 1 Cooley, *Blackstone* 744; *E. A. Stephens & Co. v. Alvers*, 81 Colo. 488, 256 P. 15, 16 (1927), *quoting* 2 W. Blackstone, *Commentaries* 388–95; Annot., 52 A.L.R. 1061 (1928); 4 Am.Jur.2d Animals sec. 19 (1962); 3A C.J.S. Animals sec. 8(d) (1973).

An application of the above rule is found in *Munninghoff v. Wisconsin Conservation Commission*, 255 Wis. 252, 38 N.W.2d 712

(1949). In that case, appellee was seeking to establish a muskrat farm. The court noted that the muskrats on the farm had been bought by appellee and that they were his personal property when they were within the licensed premises. The court stated, however, that "if a muskrat should leave a licensed area, he becomes ferae naturae, and is legitimate prey for a neighboring trapper." *Munninghoff v. Wisconsin Conservation Commission,* supra, at 716.

The common law recognizes three exceptions to this rule: (1) animals that have been domesticated, *see Oakley v. State,* 152 Tex.Cr.R. 361, 214 S.W.2d 298, 300 (1948); The Case of the Swanns, 77 Eng.Rep. 435 (1592); (2) animals that demonstrate an intention to return, *see E. A. Stephens & Co. v. Albers,* 81 Colo. 488, 256 P. 15, 16 (1927), *quoting* 2 W. Blackstone, *Commentaries* 388–95; *Ulery v. Jones,* 81 Ill. 403 (1876); and (3) animals that, after their escape, are hotly pursued by their first owner, *see Kesler v. Jones,* 50 Idaho 405, 296 P. 773 (1931). See generally Annot., 52 A.L.R. 1061 (1928); 4 Am.Jur.2d Animals sec. 19 (1962); 3A C.J.S. Animals sec. 8(b, d) (1973).

It is evident, however, that none of these exceptions apply, because the elk remained at large over a month, and appellant was unable to get within even the range of a tranquilizing rifle. The present case is instead closer in point to the *Munninghoff* case, supra, where the court applied the general common law rule. We therefore hold that the trial court correctly applied the common law rule, holding that the elk regained its status as an animal ferae naturae when it escaped from the game farm. Consequently, appellant's first point is overruled.

In his second point of error, appellant claims that the trial court erred in its finding that "the American Elk is indigenous to the North American continent." As best as we can determine from reading appellant's brief, appellant is complaining of the finding because he believes that the trial court should have applied the statutory definition of a game animal and should have found

that the American Elk is not indigenous to this state.

It is settled law in this state that a finding of fact or conclusion of law made by the trial court that is immaterial and not at issue in the case cannot present reversible error. The question in every such case should be whether the material facts found by the court are sufficient to support the judgment. *Andrews v. Key,* 77 Tex. 35, 13 S.W. 640, 641 (1890); *Warren v. Kyle,* 565 S.W.2d 313, 318 (Tex.Civ.App.—Austin 1978, no writ).

We have held in this opinion that the statutory definition of a game animal is not applicable in this case. Instead, the trial court correctly applied the common law in the case. It did not apply the statute, and therefore the finding that the American Elk is not indigenous to the North American continent is immaterial and not at issue. Consequently, there is no reversible error. Appellant's second point is overruled.

The judgment of the trial court is affirmed.